UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN AND JANE DOES D-1, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA Ministry of Foreign Affairs Jungsong-Dong, Central District, Pyongyang, Democratic People's Republic of Korea,<br><br>    Defendant. | CASE NO. 1:23-cv-00273 |

**PLAINTIFFS' MOTION FOR AN ORDER DIRECTING SERVICE
OF PROCESS BY ALTERNATIVE MEANS**

Plaintiffs respectfully move for an order directing them to effect service of process on defendant, the Democratic People's Republic of Korea ("North Korea"), by alternative means, in line with what the district court ordered in *Estate of Carmen E. Crespo et al v. Democratic People's Republic of Korea* ["DPRK"], Case No. 1:22-CV-01514 (D.D.C.) (CKK) ("*Crespo*"), and *Bae v. DPRK,* Case No. 1:20-CV-02260 (D.D.C.) (EGS) ("*Bae*"). Plaintiffs in those cases, like Plaintiffs here, are victims of state-sponsored terrorism actionable under 28 U.S.C. § 1605A(c). In both *Crespo* and *Bae*, the court directed plaintiffs to serve North Korea by alternative means because, as discussed *infra* at 4-5, none of the means of service specified in FSIA § 1608(a) is possible.

In *Crespo*, plaintiffs tried to effect service on North Korea by mail (Federal Express) as provided in FSIA § 1608(a)(3), and through the State Department under FSIA § 1608(a)(4); they

satisfied the court that neither means was possible.[1]  However, by closing its borders even to commercial courier companies, North Korea precluded service under FSIA § 1608(a)(3); and by maintaining no diplomatic relations with the United States, North Korea precluded service under FSIA § 1608(a)(4).  Judge Kollar-Kotelly ordered the *Crespo* plaintiffs to attempt service by an alternative means – i.e., sending their service documents to North Korea's U.N. Mission in New York.  Minute Order (8/30/2023). When North Korea's Mission refused to accept the FedEx delivery, Judge Kollar-Kotelly ordered service by publication via X (formerly known as Twitter).  Minute Order (9/26/2023); Declaration of Mark N. Bravin ("Bravin Decl.") ¶ 14 n.7.  The *Crespo* plaintiffs submitted proof of service by publication, as directed, and the Court held that North Korea was effectively served, ordering the defendant to answer or otherwise respond to the *Crespo* plaintiffs' complaint on or before December 5, 2023.  Minute Order (10/12/2023); Bravin Decl. ¶ 15 n.8  On December 7, 2023, the Clerk entered a default against North Korea for failing to respond as ordered.  The *Crespo* case may now proceed on the merits.

In *Bae*, Judge Sullivan ordered plaintiffs on December 4, 2023 to attempt service of process by January 4, 2024, using both of the two alternative methods authorized by Judge Kollar-Kotelly, and if these alternative methods of service fail, to file a status report by January 19, 2024 that includes proposed recommendations for further proceedings.  Minute Order (12/4/2023); Bravin Decl. ¶ 16 n.9.

For the reasons explained below, Plaintiffs here request that this Court direct them to serve North Korea by publication via X and, upon their submission of proof of compliance with

---

[1] *See Crespo* ECF No. 5 (Affidavit Requesting Foreign Mailing), No. 7 (Clerk's Certificate of Mailing), No. 14 (Plaintiffs' Status Report).

such order, they ask that the Court find that North Korea has effectively been served and must respond to the Complaint within 60 days or be found in default.

## ARGUMENT

As explained in the declaration by Plaintiffs' counsel, submitted herewith, Plaintiffs left no stone unturned in an effort to serve North Korea with the Complaint and related service documents in a manner that strictly complies with the methods enumerated in FSIA § 1608(a), but the obstacles are insurmountable. The *Crespo* court recognized that it is impossible to serve North Korea by any of the means listed in FSIA §1608(a). Minute Order (9/26/2023). When North Korea's U.N. Mission refused to accept the FedEx delivery containing their service documents, the *Crespo* plaintiffs were directed to serve North Korea via publication on the social media platform formerly known as Twitter and currently named X, they complied. North Korea failed to respond to their complaint within 60 days, and it has been found in default. Their case will now proceed on the merits.

The *Bae* court considered Judge Kollar-Kotelly's orders, and the extraordinary circumstances justifying an order authorizing service by alternative means, and concluded that the plaintiffs/terrorism victims in that case should employ the same alternative means to try to serve North Korea.

We believe that is the only way for the Court to reconcile the strong federal interest, set out in FSIA § 1605A, of giving victims of state-sponsored terrorism an avenue for seeking redress for the injuries they suffered, and the unprecedented circumstances in which North Korea has affirmatively closed off any possibility for plaintiffs to deliver notice of their claims in strict compliance with the FSIA's service provisions.

Plaintiffs in this case should be afforded the same opportunity to serve North Korea by publication via X that was given to the plaintiffs in *Crespo* and *Bae* so that they may proceed to present their case to this Court on the merits.

### A. Service on North Korea by the Methods Listed in FSIA § 1608(a) Is Impossible.

Serving North Korea under sections 1608(a)(1) and (2) is not possible because the parties have no "special arrangement" for service, and North Korea is not a member of any applicable international convention on service of judicial documents. *See Doe v. DPRK*, 414 F. Supp. 3d 109, 121 (D.D.C. 2019) ("*Pueblo I*") (Friedrich, J.)[2] (finding §§ 1608(a)(1) and (a)(2) are "unavailable" methods of service because "there is no 'special arrangement for service' between the U.S. and North Korea … and North Korea is not party to an 'applicable international convention on service ….'").

Serving North Korea under FSIA § 1608(a)(3), by any form of mail requiring a signed receipt, dispatched by the Clerk of the Court to the head of North Korea's Ministry of Foreign Affairs is not possible. Bravin Decl. ¶¶ 2-7. After the onset of the COVID-19 pandemic, DHL – the only commercial courier previously servicing North Korea since 2011 – discontinued those commercial deliveries because North Korea closed its borders to international traffic. Bravin

---

[2] *Pueblo I* was filed in 2018, shortly after North Korea was returned to the U.S. State Department's list of State Sponsors of Terrorism after a 9-year hiatus – the result of a failed attempt to halt North Korea's nuclear weapons program. That case is referred to as "Pueblo I" because it was the first to be brought by Pueblo crewmembers and immediate family members under the federal terrorism cause of action, FSIA § 1605A (enacted in 2008). An earlier case, *Massie v. DPRK*, 592 F. Supp. 2d 57 (D.D.C. 2008), was brought by Pueblo crew members and one family member under a predecessor jurisdictional statute, FSIA § 1605(a)(7), asserting only state law causes of action.

Decl. ¶¶ 4-6 & n.2 & Ex. A at 1, 4.[3] Plaintiffs attempted to effect service by Federal Express on North Korea's U.N. Mission in New York City. *See* ECF Nos. 21 (Clerk's Certificate of Mailing) & 21-1 (FedEx waybill). However, as in *Crespo*, North Korea's U.N. Mission refused to accept delivery of the package. *See* Bravin Decl. ¶ 18 & Ex. B (FedEx Tracking Record for refused delivery) at 2. The documents were returned to Plaintiffs' counsel on October 3, 2023. *See id.* & Ex. C at 1(FedEx Tracking Record for returned delivery).

Finally, Plaintiffs determined that serving North Korea under FSIA § 1608(a)(4), via the U.S. Department of State through diplomatic channels, is impossible. Bravin Decl. ¶¶ 9-11. In May and June 2023, Plaintiffs' counsel met with a representative from the State Department to determine whether the State Department could serve North Korea through diplomatic channels despite the fact that the United States does not have diplomatic relations with North Korea. *Id.* ¶ 9. During those meetings, the State Department's representative confirmed the U.S. Government does not have any diplomatic means for transmitting judicial documents to North Korea and reconfirmed this fact as recently as October 19, 2023. *Id.* ¶ 10.

Accordingly, service by alternative means is warranted in the interests of justice and fairness among similarly situated parties.

### B. The Impossibility of FSIA §1608(a) Service Warrants an Order Directing Plaintiffs to Serve North Korea by Alternative Means.

As explained in the Bravin Declaration, Plaintiffs in this case followed the steps the *Crespo* plaintiffs tried, to comply strictly with § 1608(a), but to no avail. Bravin Decl. ¶¶ 4-8, 9-11, 18. As an alternative, Plaintiffs have developed a plan reasonably calculated to provide the

---

[3] Service on North Korea through the U.S. Postal Service (USPS) is not available because its First Class Mail International service does not provide a signed return receipt or other proof of delivery. Bravin Decl. ¶ 7.

Head of North Korea's Ministry of Foreign Affairs with notice of the lawsuit. *Id*. ¶¶ 17-22. The plan involves following the same means of publication authorized in *Crespo* and *Bae*, and using an additional means of publication, via e-mail, as a further way to serve the defendant. They ask the Court to direct them to follow this plan.

Service of the requisite documents by publication on X and by email is reasonably certain to apprise North Korea of Plaintiffs' lawsuit. Plaintiffs will serve North Korea via email using the email addresses listed on the website maintained by the North Korean Ministry of Foreign Affairs. *See id*. ¶ 22 & Ex. H at 4, 6. That email will provide a link to the summons, complaint, notice of suit, offer to arbitrate, and a copy of the FSIA, together with a translation of each in Korean, pursuant to 28 U.S.C. § 1608(a)(3). The body of the email will note that it is addressed to the "Head of the Ministry of Foreign Affairs," also pursuant to § 1608(a)(3). *See id*.

In addition, Plaintiffs will serve North Korea by publication via messages posted to the X accounts of North Korea's state-run news agency Korean Central News Agency. *See id*. ¶¶ 19-21 & Exs. D-F. The messages sent via X will be in English with a translation into Korean. *See id*. ¶ 21 & Ex. G. The messages will apprise North Korea of the lawsuit and direct North Korea to a separate website containing links to download the summons, complaint, notice of suit, offer to arbitrate, and copies of the relevant sections of the FSIA in both English and Korean. *See id* ¶ 21.

In any event, North Korea is already familiar with the exact FSIA "Terrorism Exception" claims at issue in this case. In two prior terrorism cases brought against North Korea, arising out of the same set of facts at issue here, North Korea failed to appear and defend and plaintiffs

obtained final default judgments awarding substantial damages against North Korea.[4]  Moreover, the judgment obtained in *Pueblo I*, the most recent case, was widely publicized by a number of international news organizations when the judgment was issued in February 2021.[5]  Accordingly, the proposed service methods via email and X postings will summarize claims arising out of the same terrorism event for which this District already has held North Korea liable, and should provide sufficient notice of the allegations at issue in this suit.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order authorizing Plaintiffs to serve North Korea by publication, transmitting the service packet through electronic means via e-mail and X (formerly known as Twitter).

---

[4] *See Pueblo I* (exercising personal jurisdiction and holding North Korea liable under 28 U.S.C. § 1605A for hostage-taking, torture, wrongful death, intentional infliction of emotional distress, and solatium) and *Doe v. DPRK*, No. 18-CV-0252, 2021 WL 723257 (D.D.C. Feb. 24, 2021) (Friedrich, J.) (awarding damages to all 171 crew member and family member plaintiffs); *see also Massie et al. v. Gov't of the Democratic People's Republic of Korea*, 592 F. Supp. 2d 57, 75-76, 77 (D.D.C. 2008) (exercising personal jurisdiction and holding North Korea liable under predecessor FSIA terrorism exception, 28 U.S.C. § 1605(a)(7), and awarding damages to five Pueblo crew member and family member plaintiffs).

[5] *See, e.g.*, J. Griffiths, *U.S. court awards $2.3 billion to USS Pueblo crew held hostage by North Korea more than 50 years ago*, CNN (Feb. 26, 2021, 2:56 AM), https://www.cnn.com/2021/02/26/asia/uss-pueblo-judgment-intl-hnk/index.html (last accessed Dec. 8, 2023).

DATED:  December 13, 2023                    Respectfully submitted,


By: */s/* Mark. N. Bravin_____
    Mark N. Bravin (D.C. Bar No. 249433)
    Albina Gasanbekova (D.C. Bar No. 1618930)
    MITCHELL SILBERBERG & KNUPP LLP
    1818 N Street NW, 7th Floor
    Washington DC, 20036
    (202) 355-7900 (Telephone)
    (202) 355-7886 (Facsimile)
    mnb@msk.com
    a1g@msk.com

    *Counsel for Plaintiffs*